IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KELLY RUSSELL, | ) | CASE NO. 1:14 CV 1186 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.      Nature of the case and proceedings**

Before me[1] is an action by Kelly Russell under 42 U.S.C. § 405(g) for judicial review

of the final decision of the Commissioner of Social Security denying his applications for

disability insurance benefits and supplemental security income.[2] The Commissioner has

answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 14. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9]

**B.  Background facts and decision of the Administrative Law Judge ("ALJ")**

Russell, who was 46 years old at the time of the administrative decision,[10] has a high school education and has worked at various skilled, semi-skilled and unskilled jobs with different exertional levels.[11] He has HIV, which has been described as "asymptomatic,"[12] and was incarcerated in 2012.[13] He lives alone,[14] but receives help from his mother in performing household tasks.[15]

The ALJ, whose decision became the final decision of the Commissioner, found that Russell had the following severe impairments: human immunodeficiency virus, degenerative

---

[6] ECF # 13.

[7] ECF # 20 (Russell's brief); ECF # 23 (Commissioner's brief).

[8] ECF # 20-1 (Russell's charts); ECF # 23-1 (Commissioner's charts).

[9] ECF # 19 (Russell's fact sheet).

[10] Transcript ("Tr.") at 79, 81.

[11] *Id*. at 79.

[12] *Id*. at 75.

[13] *Id*. at 76.

[14] *Id.*

[15] *Id*. at 75.

-2-

disc disease, carpal tunnel syndrome, hypertension, major depressive disorder, anxiety, personality disorder, and substance abuse disorders.[16]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Russell's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he could never climb ladders, ropes, or scaffolds, occasionally climb ramps or stairs, and occasionally stoop, kneel, crouch, crawl, or engage in activities requiring balance. He could bilaterally frequently engage in gross manipulation or handling of objects, as well as fine manipulation or fingering of objects. He should avoid concentrated exposure to extreme cold and avoid all exposure to the operational control of moving machinery and unprotected heights. He could engage in simple, routine, and repetitive work, requiring only occasional interaction with the public and with coworkers.[17]

The ALJ decided that this residual functional capacity precluded Russell from performing his past relevant work as a cleaner, groundskeeper, home health aide, tagger, assistant manager, cashier, stores laborer, production worker, and production supervisor.[18]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ

---

[16] *Id.* at 71.

[17] *Id.* at 74.

[18] *Id.* at 79.

determined that a significant number of jobs existed locally and nationally that Russell could

perform.[19] The ALJ, therefore, found Russell not under a disability.[20]

## C.     Issues on judicial review and decision

Russell asks for reversal of the Commissioner's decision on the ground that it does

not have the support of substantial evidence in the administrative record. Specifically,

Russell presents the following issues for judicial review:

- The ALJ found that Russell's severe impairments do not meet or medically equal Listing 14.08(K). Does substantial evidence support that finding?

- The ALJ assigned very little weight to Dr. Parrisbalogun's mental residual functional capacity assessment of Russell. Did the ALJ fail to assign appropriate weight to the Dr. Parrisbalogun's assessment?

For the reasons that follow, I will conclude that the ALJ's finding of no disability is

not supported by substantial evidence and, therefore, must be reversed and the matter

remanded for further proceedings.

## Analysis

## A.     Standards of review

## 1.     *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable

to decisions of the ALJs in disability cases:

---

[19] *Id.* at 80.

[20] *Id.*

Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[21]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[22] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[23]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

---

[21] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[22] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[23] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

-5-

## 2.    *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[24]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[25]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[26] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[27]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[28] Although the treating

---

[24] 20 C.F.R. § 404.1527(d)(2).

[25] *Id.*

[26] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[27] *Id.*

[28] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[29] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[30] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[31]

In *Wilson v. Commissioner of Social Security*,[32] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[33] The court noted that the regulation expressly contains a "good reasons" requirement.[34] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

---

[29] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[30] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[31] *Id.* at 535.

[32] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[33] *Id.* at 544.

[34] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[35]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[36] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[37] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[38] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[39]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[40] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[41] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that

---

[35] *Id.* at 546.

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[41] *Id.* at 375-76.

-8-

court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[42] *Blakley v. Commissioner of Social Security*,[43] and *Hensley v. Astrue*.[44]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[45] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[46] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[47] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[48]

---

[42] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[43] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[44] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[45] *Gayheart*, 710 F.3d at 376.

[46] *Id.*

[47] *Id.*

[48] *Rogers*, 486 F.3d at 242.

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[49]  The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[50]  Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[51] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[52]  The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[53]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with *Gayheart*, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[54]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should

---

[49] *Gayheart*, 710 F.3d at 376.

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.*

receive controlling weight.[55] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[56] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[57] or that objective medical evidence does not support that opinion.[58]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[59] The Commissioner's *post hoc* arguments on judicial review are immaterial.[60]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the

---

[55] *Rogers*, 486 F.3d 234 at 242.

[56] *Blakley*, 581 F.3d at 406-07.

[57] *Hensley*, 573 F.3d at 266-67.

[58] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[59] *Blakley*, 581 F.3d at 407.

[60] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[61]

- the rejection or discounting of the weight of a treating source without assigning weight,[62]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[63]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[64]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[65] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[66]

---

[61] *Blakley*, 581 F.3d at 407-08.

[62] *Id.* at 408.

[63] *Id.*

[64] *Id.* at 409.

[65] *Hensley*, 573 F.3d at 266-67.

[66] *Friend*, 375 F. App'x at 551-52.

The Sixth Circuit in *Blakley*[67] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[68] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[69]

In *Cole v. Astrue*,[70] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[71]

## B.    Application of standards

### 1.    *Meeting Listing 14.08(K)*

Initially, I note that the parties implicitly seem to disagree about the exact Listing relevant to Russell's HIV impairment. Russell cites to Listing 14.08(K) as the applicable

---

[67] *Blakley*, 581 F.3d 399.

[68] *Id.* at 409-10.

[69] *Id.* at 410.

[70] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[71] *Id.* at 940.

-13-

section,[72] while the Commissioner invokes Listing 14.08(N).[73] For his part, the ALJ states that Russell's HIV impairment was analyzed to see if it met "the requirements of listing 14.08," without reference to any specific sub-grouping.[74]

In this situation I observe, as did the court in *Roberts v. Colvin*, that "Listing 14.08(N) has been recodified to 14.08(K)."[75] Thus, the Commissioner's reference to 14.08(N) is understood here as referring to the recodified 14.08(K).

Listing 14.08(K) deals with "repeated ... manifestations of HIV infection," including those listed in 14.08A-J, but without the requisite findings for those listings, "or other manifestations ... resulting in significant documented symptoms or signs," together with marked limitations in one of the following three areas: (1) "activities of daily living," (2) "maintaining social functioning," and (3) "completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace."[76] While "cognitive or other mental limitation" is given in this Listing as an "example" of a manifestation of an HIV infection addressed in this provision, by its own terms the Listing is not confined to manifestations that include cognitive or mental signs or symptoms.

---

[72] ECF # 20 at 10-11.

[73] ECF # 23 at 8-9.

[74] Tr. at 73.

[75] *Roberts v. Colvin*, 2013 WL 2297182, at *2 fn. 1 (D.Ariz. May 24, 2013)(citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 14.08).

[76] *Id*. (quoting Listing).

-14-

The ALJ here was perfunctory in analyzing whether Russell had met Listing 14.08. After first summarizing what are the initial subgroups of 14.08 that address various specific manifestations of HIV, the ALJ, without directly citing to Listing 14.08(K), restated that listing and then simply concluded that "[t]here is no evidence that shows the requirements of this listing have been met."[77]

Russell, for his part, argues that the evidence documents repeated manifestations of his HIV infection, although virtually all of the evidence he cites in this regard is his own testimony as to his symptoms[78] - testimony the ALJ found "credible in kind but not in degree,"[79] noting in a later place that a consultative examination and his 2012 prison evaluation show that Russell has only "modest" mental limitations, while his physical examinations do not show "especially severe symptoms." [80]

The Commissioner, in turn, argues that the ALJ's conclusion as to Listing 14.08 can be supported "given the opinion of the state reviewing physicians and mental health experts ...."[81] But although this is technically correct, the ALJ's opinion also states that the opinions of two state agency consultants were assigned only "little weight,"[82] while the opinions of

---

[77] Tr. at 73.

[78] ECF # 20 at 11-12.

[79] Tr . at 75.

[80] *Id*. at 78.

[81] ECF # 23 at 9.

[82] Tr. at 77.

two others - Dr. Vasiloff and Dr. Stock - appear to have been given great weight,[83] although the opinions given great weight are not directly cited or discussed by the ALJ in the discussion of Listing 14.08. Further, it is by no means clear if any evidence exists that Russell's acknowledged mental limitations have been caused by his HIV, nor if any of the opinions as to the severity of effects would be altered by consideration of the opinions of Dr. Stephani Parrisbalogun, M.D. Russell's treating psychiatrist.

In sum, this situation is somewhat risky for the reviewing court. The absence of a clear analysis specifically addressed to Listing 14.08 setting forth the precise reasoning behind the ALJ's decision, means that I am left to assemble that reasoning from other findings in other parts of the opinion. Thus, while the assembled pieces may appear to fit together into a coherent whole, the fact that the assembly was done by the Court and not the ALJ undermines any finding that the ALJ's decision, not mine, was supported by substantial evidence.

Accordingly, for the reasons stated, I conclude that the decision that Russell's HIV does not meet Listing 14.08 is not supported by substantial evidence. Thus, the matter must be remanded for a clearer, more specific analysis of this issue, and a more precise articulation of the resulting decision.

---

[83] *Id*. at 78.

## 2.     *Treating source opinion*

As noted, the record contains two functional opinions from Dr. Parrisbalogun, both given in 2012.[84] The ALJ reasoned that these opinions were entitled to only little weight.[85] In support of that finding, the ALJ gave four reasons: (1) the short length of the treatment relationship; (2) the opinions are conclusory, virtually without explanation; (3) the treatment period closely overlaps with Russell's period of drug use, which would distort his functioning; and (4) the opinions are inconsistent with the other evidence of record.[86]

The *Gayheart* standards require that the analysis of a treating source opinion first examine if it is entitled to controlling weight by considering if it is well-supported by clinical evidence and consistent with the other evidence of record. Only if it is not entitled to such weight as a result of this analysis is the review to proceed to the question of what weight is warranted, which involves questions such as the length of the treatment relationship.

Here, the ALJ's response to the first inquiry appears to be that Dr. Parrisbalogun's opinions are not well-supported by clinical findings, including the fact that they involve a time when Russell was using drugs, and that they are not consistent with the record as a whole, and so do not merit controlling weight. The ALJ then appears to answer *Gayheart*'s second level of inquiry by finding the opinions deserve little weight because they are the result of a short treatment period.

---

[84] Tr. at 607-08, 630-31.

[85] *Id*. at 78.

[86] *Id*.

I note first that Dr. Parrisbalogun appears to have treated Russell twice in 2012 - in August[87] and again in October,[88] issuing functional opinions after each visit.[89] The regulations themselves indicate that "an ongoing treatment relationship" may exist where a physician has treated or evaluated a patient "only a few times or only after long intervals (e.g. twice a year) ... if the nature and frequency of the treatment of evaluation is typical" for the claimant's condition.[90] Thus, without more, the mere fact that Dr. Parrisbalogun treated Russell twice over the period of three months in 2012 neither definitively removes her as a treating source under the first level of inquiry under *Gayheart*, nor, under the second level of inquiry, does it provide a significant reason for discounting an opinion from what is otherwise a treating source.

Further, the mere fact that Dr. Parrisbalogun's opinions were given as responses on a check-box form also does not provide substantial evidence that they are conclusory. As I have noted before, check-box forms are used by medical sources advanced by both claimants and the Commissioner. The key question is whether the answers so presented are supported by the treatment notes or the other clinical evidence relied on by the evaluator. Here, there is no indication that the ALJ compared the treatment notes with the checkbox responses

---

[87] Tr. at 611.

[88] *Id*. at 632-33.

[89] *Id*. at 607-08 (August), 630-31 (October).

[90] 20 C.F.R. § 404.1502.

-18-

before finding that those responses were not supported by the notes.[91] Thus, the mere form of the response does not serve as substantial evidence for concluding that Dr. Parrisbalogun is not a treating source.

If there is no substantial evidence for rejecting Dr. Parrisbalogun as a treating source, the inquiry does not move to the next level of deciding what weight to assign, since a treating source opinion is entitled to controlling weight. Moreover, I note the additional explanations for reducing the weight given Dr. Parrisbalogun's opinion are also less than substantial. As Russell notes, the explanation that Dr. Parrisbalogun's opinion is tainted for having been given while Russell was using drugs may not be accurate, and the statement that Dr. Parrisbalogun's opinion is contradicted by the record is difficult to assess because the ALJ did not point to any specific areas where the opinion is contrary to other evidence.

In short, without prejudging the ultimate result, I find that the ALJ's reasons for not recognizing Dr. Parrisbalogun as a treating source, and then for discounting her functional opinions, are not supported by substantial evidence. Thus, this matter must also be considered on remand.

---

[91] In this regard, *see* ECF # 20 at 14-15 (citing record).

## Conclusion

Accordingly, for the reasons given above, I find that substantial evidence does not support the finding of the Commissioner that Russell had no disability. Therefore, the denial of Russell's applications is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.


Dated: August 31, 2015                                    s/ William H. Baughman, Jr.
                                                          United States Magistrate Judge